UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

STEPHANIE WATSON,

        Plaintiff,

    v.                                    Case No.: 2:13-1204
                                         JUDGE SMITH
                                       Magistrate Judge Jolson

OHIO DEPARTMENT OF
REHABILITATION & CORRECTION,

        Defendant.

## OPINION AND ORDER

This matter is before the Court upon Defendant's Motion for Summary Judgment (Doc. 42). Plaintiff responded to Defendant's motion (Doc. 49) and Defendant replied in support of its motion (Doc. 55). This matter is now ripe for review. For the following reasons, Defendant's motion is **GRANTED**.

## I.    BACKGROUND

This lawsuit arises out of the former employment relationship between Defendant, the Ohio Department of Rehabilitation & Correction, ("DRC") and Plaintiff, Stephanie Watson ("Plaintiff" or "Ms. Watson"). Plaintiff is a fifty-nine-year-old, African-American female who spent fifty days as a Parole Officer with DRC. (*See* Doc. 24, 2d Am. Compl. at ¶¶ 3, 6). DRC is an Ohio agency that specializes in the operation of prisons throughout the state. (*Id.* at 2). Jay Glauner was Plaintiff's direct supervisor during her time with DRC and Cynthia Ali was an additional supervisor at DRC. (Doc. 49-1, Pl.'s Aff. at ¶ 8).[1]

---

[1] The Court notes that numerous documents in this lawsuit were filed repeatedly by both parties, some even in quadruplicate. Even if the Court excludes Plaintiff's manual filing which was nearly 900 pages, approximately

### A.    Plaintiff's Employment with DRC

Plaintiff began her employment with DRC on August 17, 2010,[2] and was terminated on October 2, 2010, following a series of write-ups and Plaintiff's failure to appear at a mandatory firearms training.  The circumstances surrounding Ms. Watson's previous write-ups and termination are disputed.  As a new employee at DRC, Plaintiff was on a probationary term.

Plaintiff's first incident involved her first two days at the Mansfield Adult Parole Authority ("APA").  On her first day, August 17, 2010, Plaintiff left work early after receiving permission from an Administrator named Laura, but not from Mr. Glauner or Ms. Ali as neither was present at that time.  (Doc. 39, Pl.'s Dep. at 43–44).  Defendant also alleges that Ms. Watson left early on her second and third days without permission, but Ms. Watson denies she left early and no incident report was filed regarding her hours for either day.  (Doc. 49-1, Pl.'s Aff. at ¶ 8; Doc., 42-3, Glauner Decl. at ¶¶ 9–10).  Ms. Watson alleges that on August 18, 2010, she asked Mr. Glauner if she could skip her lunch or another break so that she could leave early to get a flat tire fixed.  (Doc. 39, Pl.'s Dep. at 47).  Mr. Glauner granted her permission to do so but told her that probationary employees could not flex, even though it appears that is exactly what he approved her to do.  (*Id.*).  Mr. Glauner alleges that he granted Plaintiff permission to flex some time on her fourth day for car trouble.  (Doc. 42-3, Glauner Decl. at ¶ 13).

Ms. Watson also attended officer training at the Corrections Training Academy ("CTA"). (*Id.* at ¶ 15).  Ms. Watson arrived at CTA on August 22 and began officer training on August 23, 2010.  (Doc. 39, Pl.'s Dep. at 51).  Ms. Watson spent the night in the dorms at CTA to avoid

---

4,000 pages were filed in conjunction with the Motion for Summary Judgment.  A citation to a deposition exhibit is more than sufficient to allow the Court to review the document.  It need not be filed as an exhibit to an affidavit when it has already been as part of an exhibit to an EEOC filing that itself has already been filed twice.  This duplicative filing puts a strain on the Federal Court filing system and is a waste of time for all interested in the speedy resolution of cases.

[2] The parties cannot agree if Plaintiff's first day was August 16 or August 17th.  The Court will use August 17th as it is the date provided by Plaintiff.

extra drive time.  (*Id.* at 52).   After Ms. Watson's first night in the dorms, she developed an illness.   She filed an Incident report noting that the dorm room temperature was below 60 degrees, that the room contained mold, mildew, and other air quality problems, and the air conditioner was too loud for her to sleep.  (Doc. 42-2, Andrews Decl. at Ex. B, PAGEID# 4320–23).  She reported that she developed sinus inflammation, infection, and a fever.  (*Id.*).

On August 23, 2010, while at CTA, Ms. Watson was written up for corrective counseling by Beth Kreger for wearing flip flops—a violation of the grooming policy.  (Doc. 36-1, Kreger Dep. at Ex. 29, PAGEID# 469).   Ms. Watson denies that she ever wore flip flops at CTA and alleges that Ms. Kreger was wearing flip flops at the time Ms. Kreger reported Ms. Watson's dress code violation.  (Doc. 39, Pl.'s Dep. at 63).   Ms. Watson testified that she was wearing mesh flats that covered her toes, heels, and her insole.  (Doc. 39, Pl.'s Dep. at 72).

Later, on August 25, 2010, James Cochran, the Safety and Health Coordinator at CTA, filed an Incident Report regarding Plaintiff.  (Doc. 39-1, Pl.'s Dep. at Ex. 12, PAGEID# 1642). Mr. Cochran reported that Ms. Watson parked her car in a reserved area.  (*Id.*).  He asked her to move her car but Ms. Watson stated that "she could park anywhere she wanted."  (*Id.*).  Mr. Cochran again asked her to move her car, at which time she complied.  (*Id.*).  Ms. Watson denies that the incident ever occurred.  (Doc. 49-1, Pl.'s Aff. at ¶ 10).

On September 20, 2010, Plaintiff is again alleged to have dressed inappropriately for her job although the report was not filed until after she was fired.   Senior Parole Officer Mike Wallery filed an incident report on October 5, 2010, stating that Plaintiff arrived for field work wearing slip on shoes and a dress.  (Doc. 39-1, Pl.'s Dep. at Ex. 11, PAGEID# 1641).   While Wallery and Plaintiff were checking on a parolee, Plaintiff lost one of her shoes going up the

stairs.  (*Id.*).  Wallery's report also says that he was asked to complete a report by Mr. Glauner on October 4, 2010.  (*Id.*).

The disintegration of the relationship between Plaintiff and DRC sped up starting on October 1, 2010.  As part of her training, Plaintiff was required to take firearms training classes. (Doc. 42-3, Glauner Decl. at ¶ 17).  Glauner scheduled Plaintiff for firearms training with Walt Poffenbaugh at North Central State College in Mansfield.  (*Id.* at ¶ 22).  Some of the trainings were scheduled for Saturdays.  (Doc. 39-1, Pl.'s Dep. at Ex. 14).  Plaintiff told Glauner that Saturdays were bad for her and asked for a different schedule, but Glauner was unable to find a firearms training course that was near Plaintiff's home that provided classes during weekdays. (Doc. 42-3, Glauner Decl. at ¶ 25).  Leading up to Plaintiff's first training on September 30, Glauner testified that he repeatedly told Plaintiff to keep track of her hours spent at the September 30 training and to flex those hours off on Friday, October 1.  (*Id.* at ¶ 35).  Plaintiff denies that Glauner ever told her to flex her time off on Friday and insists that Glauner told her she was not allowed to flex under any circumstances as long as she was a probationary employee.  (Doc. 39, Pl.'s Dep. at 120–21).  Through an error on his part, Glauner failed to remember or recognize that Plaintiff also had training on Saturday, October 2, 2010, and failed to remind her to flex an additional day off to account for her firearms training.  (Doc. 35, Glauner Dep. at 41).

On October 1, 2010, Glauner came into Plaintiff's office and told her to go home because he assumed that she had worked the requisite forty hours that week because she had attended training the previous night.  (Doc. 39, Pl.'s Dep. at 114–15; Doc. 35, Glauner Dep. at 44–45). Plaintiff refused to leave, told Glauner that she was not allowed to flex her hours, and asked for a written order to leave work.  (Doc. 42-3, Glauner Decl. at ¶¶ 40–41).  Glauner provided a written

4

order stating, "You are hereby being given a direct order to leave work.  You have met your 40-hour requirement for the week and are not being approved to work overtime."  (Doc. 39-1, Pl.'s Dep. at Ex. 16).  At 10:05, Plaintiff responded to Glauner by email stating, "You just directed me per written directive to leave the office due to refusal to pay me overtime.  You further stated that I am not to work Saturdays including this Saturday-Oct. 2, 2010 which you had scheduled for firearms training."  (Doc. 39-1, Pl.'s Dep. at Ex. 17).  She then sent a second email at 10:07 stating "You just directed me to leave the office because you did not wish to pay me overtime and further directed me not to work on Saturdays-Oct. 2, 2010.  You scheduled all conflicting times and knew in advance."  (Doc. 39-1, Pl.'s Dep. at Ex. 18).

At 10:10, Glauner—apparently realizing his error regarding Plaintiff's Saturday training—came back into her office and instructed her that she had to work Saturday, October 2.  (Doc. 35, Glauner Dep. at 49).  Plaintiff admits she received this verbal order and memorialized it an email to Glauner, stating "At 10:10 a.m., you just came back into my office and informed me that I now have to work Saturday which would be overtime."  (Doc. 39-1, Pl.'s Dep. at Ex. 18; *see also id.* at 127–28).  In the remainder of her email, she objects to the order, stating that working Saturday would be overtime and that she could not flex.  (*Id.* at Ex. 19).  In the same email, sent at 10:12, Plaintiff then asked for a statement that she must work on October 2 before she left the office.  (*Id.*).  Plaintiff left the office at 10:15 and wrote a note to Glauner stating, "I have nothing in writing re: Sat. working as I requested before leaving office.  So per your written directive, I will not work."  (*Id.* at Ex. 20).  At or about 10:45, Glauner responded, "You are to attend your scheduled firearms training.  You were not given instructions that you were unable to flex your hours.  You were given instructions to get approval from me prior to flexing your hours.  You will be compensated for the overtime you accrue tomorrow."  (Doc. 35, Glauner

Dep. at Exhibit 8, PAGEID# 430).  Glauner did obtain overtime approval for Plaintiff on Friday and called Plaintiff later that day but Plaintiff did not answer.  (Doc. 42-3, Glauner Decl. at ¶ 50).

Plaintiff did not attend training on Saturday and Commander Poffenbaugh informed Glauner of Plaintiff's failure to attend training.  (*Id.* at Ex. J).  On October 4, Glauner memorialized the conversation in an incident report, stating that Plaintiff, "failed to show for training on 10/2/10.  [Poffenbaugh] further stated that she had phoned him on Friday, 10/1/10 at approximately 3:30 pm and informed him that she would not be attending class on 10/2/10." (*Id.*).  Glauner's report also notes that Poffenbaugh informed him that Plaintiff "displayed a poor attitude in class on Thursday, 9/30/10 and was making comments to instructors regarding the appropriateness of various police shootings . . . ." (*Id.*).  Plaintiff denies that she spoke about any police shootings and denies having a poor attitude.  (Doc. 39, Pl.'s Dep. at 103–5).  Following this phone call, Glauner and Ms. Ali called Sara Andrews to inform her of Plaintiff's failure to attend training.  Ms. Andrews made the decision to terminate Plaintiff's employment, effective October 6, 2010.  (Doc. 39-1, Pl.'s Dep. at Ex. 22; Doc. 42-2, Andrews Decl. at ¶¶ 9–11).

Following her removal, Plaintiff filed an EEOC charge in 2011, alleging harassment and discrimination on the basis of race, sex, age, disability, and in retaliation for protected activity between August 25, 2010 and October 6, 2010.  (Doc. 39-1, Pl.'s Dep. at Ex. 2, PAGEID# 1579).  Although the first EEOC charge bearing a received stamp is dated September 20, 2011, a different EEOC document notes, "Received signed [charging party] correspondence.  Charge Formalized and Assessed" on June 21, 2011.  (Pl.'s Mem. Contra Ex. 1 at 24, 36).[3]  A "Charge Detail Inquiry" form also shows that Plaintiff had contact with the EEOC on June 27, 2011, June

---

[3] Plaintiff filed two exhibits manually with her Memorandum Contra.  Citations to these manually filed exhibits will refer to "Pl.'s Mem. Contra Ex. 1" or "Pl.'s Mem. Contra Ex. 2."  Pin cites will note the page number within each exhibit.

29, 2011, July 6, 2011, July 27, 2011, and August 18, 2011.  (*Id.* at 26–27).  Additionally, an

EEOC "Charge Transmittal" notes that the charge was initially received by the EEOC on June

21, 2011, and was signed by two EEOC officials.  (*Id.* at 35).

**B.**     **Plaintiff's Job Applications with DRC**

Following her termination, Plaintiff applied for over 100 jobs with DRC for various

positions at various DRC locations throughout Ohio.  (Doc. 24, 2d Am. Compl. at ¶ 18).

Plaintiff reduced her claims to those surrounding 23 open positions with DRC for which she was

not selected.  The Court will use the numbering in the chart below to identify each job:

|      | PN#      | Pl.'s Ex | PAGEID#s   | Job Title              | Notified Date | County       |
|------|----------|----------|------------|------------------------|---------------|--------------|
| 1    | 20024882 | 28       | 1681–1750  | Assistant Principal    | 11/5/2012     | Allen        |
| 2    | 20024882 | 30       | 2070–2118  | Assistant Principal    | 7/31/2012     | Hocking      |
| 3    | 20021823 | 32       | 2120–2168  | Assistant Principal    | 4/25/2014     | Marion       |
| 4    | 20033358 | 34       | 2170–2229  | Teacher 1 (ABE GED)    | 12/2/2010     | Belmont      |
| 5    | 20029985 | 35       | 2230–2257  | Teacher 1 (ABE GED)    | 2/24/2011     | S. E.        |
| 6    | 20024885 | 36       | 2258–2295  | Teacher 1 (ABE GED)    | 4/18/2012     | Hocking      |
| 7a   | 20029125 | 37       | 2296–2412  | Teacher 1 (ABE GED)    | 2/28/2012     | Dayton       |
| 7b   | 20075044 | 37       | 2296–2412  | Teacher 1 (ABE GED)    | 2/28/2012     | Dayton       |
| 8    | 20033349 | 38       | 2413–2540  | Teacher 1 (ABE GED)    | 7/5/2013      | Belmont      |
| 9a   | 20024564 | 40       | 2541–2682  | Teacher 1 (ABE GED)    | 4/26/2013     | SOCF         |
| 9b   | 20024565 | 40       | 2541–2682  | Teacher 1 (ABE GED)    | 4/27/2013     | SOCF         |
| 10   | 20029597 | 41       | 2683–2834  | Teacher 1 (ABE GED)    | 10/4/2013     | Lorain       |
| 11   | 20033349 | 42       | 2835–2899  | Teacher 1 (ABE GED)    | 9/23/2013     | Belmont      |
| 12   | 20033353 | 43       | 2900–2951  | Teacher 1 (ABE GED)    | Unknown       | Belmont      |
| 13   | 20027958 | 44       | 2952–3052  | Teacher 1 (ABE GED)    | 7/15/2013     | Pickaway     |
| 14   | 20028959 | 45       | 3053–3181  | Teacher 1 (ABE GED)    | 12/3/2013     | Trumbull     |
| 15   | 20033355 | 47       | 3185–3277  | Teacher 1 (ABE GED)    | 2/13/2014     | Belmont      |
| 16   | 20029986 | 49       | 3288–3409  | Teacher 1 (ABE GED)    | Unknown       | Warren       |
| 17   | 20028960 | 51       | 3420–3511  | Teacher 1 (ABE GED)    | 6/25/2013     | Trumbull     |
| 18   | 20028255 | 52       | 3512–3653  | Teacher 1 (Lit Unit)   | 1/14/2014     | Warren       |
| 19   | 20030923 | 54       | 3701–3945  | Teacher 1 (Unspecified)| 4/29/2011     | Noble        |
| 20   | 20028420 | 53       | 3654–3700  | Teacher 2              | 2/26/2013     | Ross         |
| 21   | 20018061 | 55       | 3946–4063  | Educ. Admin. 1         | 3/24/2015     | Ohio Central |

The Court's table is a synthesis of the reference methods used by Plaintiff and Defendant and contains the exhibit numbers and PAGEID#s from Plaintiff's deposition that correspond with each job.  Additionally, the Court lists the institution for the job posting and the date DRC sent a letter to Plaintiff notifying of her non-selection where such evidence was provided.  Plaintiff did not receive any of the 23 openings.  As the Court analyzes Plaintiff's *prima facie* case, the Court will discuss the specific facts underlying each position.

The hiring process for DRC followed a standard procedure for each of the jobs to which Plaintiff applied.  First, the job is posted to the State of Ohio's job board, NEOGOV.  (Doc. 42-4, Patterson Decl. at ¶ 4).  NEOGOV receives the applications and transmits them to DRC.  (*Id.* at ¶ 6).  Once DRC receives the application, a Subject Matter Expert ("SME") reviews each application to determine if the applicant meets the minimum qualifications.  (*Id.* at ¶ 7).  The SME also awards points for the applicant's relevant education, certifications, and experience.  (*Id.*).  Each application is reviewed by only one SME and there is no substantive evaluation of an SME's reviews by a supervisor or other party.  (Doc. 38, Patterson Dep. at 11–12).  Although an SME review is designed to be objective, scoring discrepancies occur with some regularity even when an applicant submitted an identical resume for an identical position.  (Doc. 49-1, Watson Aff. at ¶¶ 7-3, 7-7).  Once the SME tallies the scores for all of the applicants, a hiring panel may either make a merit selection without interviews or may interview an applicant pool to fill the position.  (Doc. 42-4, Patterson Decl. at ¶¶ 11–12).  Once the panel decides to recommend an applicant—either after interviews or through a merit selection—the panel fills out a Recommendation for Personnel Selection ("RPS") form.  (*Id.*).  The panel sends the RPS form to the final decision-maker at the institution, called the Appointing Authority.  The institution can approve or disapprove the applicant based on conversations with the panel and a review of the

applicant's credentials.  (Doc. 42-7, Coleman Decl. at ¶ 5).  After approval, DRC human resources contacts the candidate to inform the candidate of the selection and then requires a drug test and background check on the applicant prior to final offer.  (Doc. 42-5, Hall Decl. at ¶ 5).

Plaintiff filed two additional EEOC charges regarding DRC's decisions not to hire her for these positions.  She filed her second charge ("Charge Two") on July 1, 2013, and her third charge ("Charge Three") on April 10, 2015.  (*See* Pl.'s Mem. Contra Ex. 2 at 34–38; Doc. 39-1, Pl.'s Dep. at Ex. 4, PAGEID# 1586).  Charge Two specifically referenced Jobs 9a, 9b, and 17, alleging race, sex, age, disability, and retaliatory discrimination.  (Pl.'s Mem. Contra Ex. 2 at 34–38).  Charge Three refers to only Job 21 with specificity and also claims race, sex, age, disability, and retaliatory discrimination.  (Doc. 39-1, Pl.'s Dep. at Ex. 4, PAGEID# 1586).

Plaintiff brought this suit alleging that DRC discriminated against her when it removed her from her position as a probation officer and that DRC continued to discriminate against her when it did not hire her for the twenty-three job openings before this court.  Plaintiff brings age, disability, and retaliatory discrimination claims for her removal and all of the jobs she did not receive.  Plaintiff also brings sex and race discrimination claims for her removal and Jobs 2, 4, 6, 9b, 10, 12, 15, 16, 19, and 21.  In addition to those claims outlined above, Plaintiff brings a race discrimination claim for Jobs 1, 3, 5, 7a, 7b, 8, 11, 13, 14, 17, 18, and 20.

## II.    STANDARD OF REVIEW

Defendant moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether

there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists if the Court finds a jury could return a verdict, based on "sufficient evidence," in favor of the nonmoving party; evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id*. at 249-50.

The party seeking summary judgment shoulders the initial burden of presenting the court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (after burden shifts, nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury"). In considering the factual allegations and evidence presented in a motion for summary judgment, the Court must "afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party." *Id*.

### III.    DISCUSSION

Defendant makes numerous arguments in support of its motion: 1) that Defendant is immune from Plaintiff's ADEA and ADA claims; 2) that Plaintiff failed to exhaust many of her administrative remedies before filing a claim under Title VII; 3) that Plaintiff cannot make out *prima facie* cases for her claims of discrimination and retaliation; and 4) that even if Plaintiff does set forth a *prima facie* case, she cannot show pretext to overcome the legitimate non-

discriminatory reasons given by Defendant.  Plaintiff opposes Defendant's Motion on factual and legal grounds which will be discussed further below.

**A.     Immunity**

Defendant claims that it is immune from Plaintiff's ADA and ADEA claims under the Eleventh Amendment.  Plaintiff did not respond to this argument.  Plaintiff brings wrongful termination and failure-to-hire claims under the ADEA in Counts Six and Seven, a wrongful termination claim in Count under Title I of the ADA in Count Five, and a retaliation claim under Title V of the ADA, also in Count Five.  The Eleventh Amendment bars "any suit in law or equity, commenced or prosecuted against one of the United States."  U.S. Const. amend. XI.  "It is well settled that sovereign immunity applies to 'state agents and instrumentalities,' like ODRC, in addition to the states themselves."  *Lutz v. Ohio Dep't of Rehab. & Corr.*, No. 2:10-CV-877, 2010 WL 4919775, at *2 (S.D. Ohio Nov. 29, 2010) (Frost, J.) ("*Lutz I*").  There are three exceptions to Eleventh Amendment immunity: 1) "Congress may abrogate immunity by statute;" 2) "suit[s] against a state official seeking prospective injunctive relief . . . ;" and 3) waiver by the state."  *Carten v. Kent State Univ.*, 282 F.3d 391, 398 (6th Cir. 2002) (citing *Ex parte Young*, 209 U.S. 123 (1908); *Lawson v. Shelby Cnty.*, 211 F.3d 331 (6th Cir. 2000)).

As Plaintiff has not made a claim against a state official in this case, the second exception is not applicable in this case.  Additionally, Ohio has not waived its immunity with respect to ADA claims.  *See Lutz I*, 2010 WL 4919775 at *3 (quoting *Johns v. Sup. Ct. of Ohio*, 753 F.2d 524, 527 (6th Cir. 1985).  Accordingly, the Court need only consider whether Title I or Title V of the ADA or the ADEA abrogated the states' Eleventh Amendment Immunity.

Both Supreme Court and Sixth Circuit case law is clear that Title I of the ADA "did not abrogate the states' Eleventh Amendment immunity, [and] individuals may not sue states for money damages under Title I."  *Whitfield v. Tennessee*, 639 F.3d 253, 257 (6th Cir. 2011) (citing

*Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 (2001)).  Plaintiff makes no argument to the contrary.  To the extent Plaintiff properly pleaded an ADA Title V claim, DRC is immune from that claim as well.  Although the Sixth Circuit has not ruled on the issue of Title V abrogation, the Ninth Circuit and this Court have determined that Ohio is immune from Title V claims that arise out of Title 1 claims.  *Demshki v. Monteith*, 255 F.3d 986 (9th Cir. 2001); *Lutz v. Ohio Dep't of Rehab. & Corr.*, No. 2:10-CV-877, 2011 WL 587144, at *1 (S.D. Ohio Feb. 9, 2011) (Frost, J.) ("*Lutz II*").  As Plaintiff has submitted no argument to the contrary, the Court finds that Defendant is immune from Plaintiff's ADA Title I and Title V claims.  Thus, summary judgment on Plaintiff's Count Five is **GRANTED**.

Similar to Plaintiff's ADA claims, Plaintiff's ADEA claims are also subject to Eleventh Amendment immunity.  The Supreme Court has held that there is no abrogation of immunity in the ADEA.  *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 91 (2000).  Ohio has not consented to ADEA suits.  *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005).  Last, Plaintiff has not made a claim against an individual for prospective relief or made any argument against immunity.  Because no exceptions apply, summary judgment is **GRANTED** as to Plaintiff's claims under the ADEA, Counts Six and Seven.

**B.    Removal Claims**

Plaintiff makes multiple claims that relate to her employment with DRC.  As Plaintiff's age-based and disability-based removal claims have been dismissed, only her race and gender-based removal claims remain pending before the Court.  Defendant makes three arguments against the removal claims: 1) the removal claims were never administratively exhausted because the EEOC charge was filed out of time; 2) that Plaintiff cannot make out a *prima facie* case for discrimination; and 3) that even if Plaintiff can set forth a *prima facie* case, there is no evidence

of pretext to overcome the alleged non-discriminatory reason for her termination.  The Court will address each in turn.

### 1.        Exhaustion

Defendant argues that Plaintiff failed to exhaust her administrative remedies for her removal claims and for many of her failure-to-hire claims.  In order for this Court to reach the merits of Plaintiff's Title VII claims, Plaintiff must first have exhausted all of her administrative remedies.  *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir. 1992) (overruled on other grounds by *Nat'l R.R. Passenger Corp. (Amtrak) v. Morgan,* 536 U.S. 101, 111–14 (2002)).  "It is well settled that a plaintiff must satisfy two prerequisites before filing a Title VII action in federal court: (1) timely file a charge of employment discrimination with the EEOC; and (2) receive and act upon the EEOC's statutory notice of the right to sue ('right-to-sue letter')."  *Granderson v. Univ. of Mich.*, 211 F. App'x 398, 400 (6th Cir. 2006).  "The burden of demonstrating exhaustion lies with the plaintiff."  *Smith v. Healthsouth Rehab. Ctr.*, 234 F. Supp. 2d 812, 814 (W.D. Tenn. 2002) (citing *McBride v. Citgo Petroleum Corp.*, 281 F.3d 1099, 1106 (10th Cir. 2002)).

Defendant argues that Plaintiff did not file her EEOC claim regarding her termination until September 11, 2011, over 300 days past the date of her termination.  Plaintiff responded by citing a "Case Activity Log" contained within an EEOC file that notes that on June 21, 2011, an EEOC Investigative Assistant wrote, "Received signed CP correspondence; Charge Formalized and Assessed."  (Pl.'s Mem. Contra Ex. 1 at 24).  Plaintiff also provided two additional EEOC documents which show case activity in June of 2011, within the 300-day time limit.  (*Id.* at 26–27, 35).  Defendant did not refute or respond to Plaintiff's evidence.  Accordingly, the Court finds that the removal claim was properly filed within 300 days of Plaintiff's termination.

2.    *Prima Facie* **Case**

Before addressing Plaintiff's *prima facie* case, the Court notes that Plaintiff's race and gender disparate treatment claims are necessarily limited to one adverse employment action, Plaintiff's termination.  Plaintiff's termination from DRC is the only adverse employment action she alleges in the Second Amended Complaint when setting forth the bases for her race and gender disparate treatment claims.  (Doc. 24, 2d Am. Compl. at ¶¶ 32, 43).

Claims of both race and gender discrimination use the *McDonnell Douglas* burden shifting framework for cases where there is no direct evidence of discrimination.  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1972)).  It is the Plaintiff's burden "to establish a *prima facie* case of discrimination."  *Id.*  If the Plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the Defendant to "to articulate some legitimate, nondiscriminatory reason for the employee's [termination]."  *McDonnell Douglas*, 411 U.S. at 802.  If Defendant articulates such a reason, "plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant . . . were a pretext for discrimination."  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (citing *McDonnell Douglas*, 411 U.S. at 804.)

In order to establish a *prima facie* case for race or gender discrimination through disparate treatment, Plaintiff must show "(1) she was a member of a protected class; (2) she was discharged; (3) she was qualified for the position; and (4) she was replaced by a person outside the class" or that "a comparable non-protected person was treated better."  *Mitchell*, 964 F.2d at 582–83 (internal quotations omitted).

DRC admits that Plaintiff has satisfied each of the first three elements but disputes the fourth element, arguing that Plaintiff did not identify who replaced her and that she only named two other employees who were treated better, Jesse Wendl and Amy Merker.  Ms. Merker is a white female who allegedly also violated the dress code at CTA by wearing flip flops.  (Doc. 39, Pl.'s Dep. at 201).  Ms. Merker is not alleged to have missed training and is not even mentioned in Plaintiff's Memorandum Contra.  (*See* Doc. 49, Mem. Contra at 38–40).  Mr. Wendl is a white male who shared a supervisor with Plaintiff and was subject to the same standards as Plaintiff as a probationary employee.  (Doc. 39, Pl.'s Dep. at 165–66; Doc. 42, Mot. Summ. J. at 29).

In order to make out a case for disparate treatment, Plaintiff must show that the employee who was treated better is "similarly situated *in all respects*."  *Mitchell*, 964 F.2d at 583 (emphasis in original).  However, the Sixth Circuit has clarified that rather than require that a fellow employee be similarly situated in all respects, the *McDonnell Douglas* test only requires that the fellow employee be similarly situated in relevant respects.  *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994).  In considering cases involving discipline, the question is whether the other employee has engaged in acts of "'comparable seriousness,'" yet was "'nevertheless retained.'"  *Clayton v. Meijer, Inc.*, 281 U.S. 605, 611 (6th Cir. 2002) (quoting *McDonald v. Santa Fe Transp. Co.*, 427 U.S. 273, 283 (1976).

It is undisputed that Plaintiff did not attend a firearms training on October 2, 2010, that she was verbally ordered to attend and that was a major factor in her ultimate termination. Although Plaintiff insists that there was "no other direct order given" to countermand Glauner's order to leave, in deposition testimony and in her email to Glauner at 10:12, she admits that Glauner told her to attend firearms training on October 2, 2010.  (Doc. 49-1, Pl.'s Aff. at ¶ 11;

*see also* Doc. 39-1, Pl.'s Dep. at 127–28 and Ex. 18).  Plaintiff's own deposition testimony and emails show that Plaintiff knew she was verbally ordered to attend firearms training and did not attend.  (*Id.*).  Further, Plaintiff was adjudged to have violated a rule of the Standards of Employee Conduct.  (Doc. 42-2, Andrews Decl. at ¶ 9).  Plaintiff was removed three days after this event.  (*Id.* at ¶ 10–11).

The allegations concerning Ms. Merker are not sufficient to show to that Ms. Merker was similarly situated to Ms. Watson.  Although Ms. Watson was written up for wearing flip flops and Ms. Merker was not, there is no allegation that Ms. Merker missed a mandatory training as Plaintiff did.  Further, Plaintiff presented no evidence that Ms. Merker shared work standards or supervisors with Plaintiff.  Accordingly, Ms. Merker is not similarly situated to Plaintiff.

The allegations regarding Mr. Wendl require more scrutiny.  Plaintiff alleges that Mr. Wendl was allowed to flex his time, was allowed to use vacation time, left work early, and did not attend one of his firearms training classes.  (Doc. 39, Pl.'s Dep. at 171–80).  Plaintiff was also allowed to leave work early with permission, was allowed to flex time, was allowed to use sick leave, and did not attend firearms training class.  (Doc. 49-1, Pl.'s Aff. at ¶¶ 8, 10; Doc. 39, Pl.'s Dep. at 176).  However, Defendant contests that Plaintiff cannot show Mr. Wendl improperly missed firearms training or that he avoided punishment if he did so.  Specifically, Defendant argues that Plaintiff does not know if Mr. Wendl had permission to be absent and that Plaintiff's deposition testimony regarding Mr. Wendl relies on an email that she never produced.  (Doc. 42, Mot. Summ. J. at 30).  Plaintiff makes no argument to the contrary and points to no evidence showing that Mr. Wendl missed a mandatory training without permission or that he escaped such an event without punishment.  Plaintiff failed to establish that she and Mr. Wendl

are similarly situated. Therefore, summary judgment as to Plaintiff's race and disparate treatment claims related to her termination is **GRANTED**.

## C.     Applications and Retaliation

Plaintiff has pared down her failure-to-hire and EEOC retaliation claims to twenty-three positions for which she applied but was not hired. Two of the job postings—Job 7 and Job 9—each had two openings which were filled, bringing the total number of claims to 23. (*See* Doc. 39, Pl.'s Dep. at Exs. 37, 40). Defendant objects to each claim for various reasons as summarized in Defendant's Chart 9. (Doc. 42, Mot. Summ. J. at 54–55). Defendant's proffered reasons for summary judgment are as follows: 1) Plaintiff failed to exhaust her administrative remedies because she failed to file some claims with the EEOC and filed other claims more than 90 days after receipt of the right to sue letter; and 2) Plaintiff failed to make a *prima facie* case, and/or Plaintiff failed to proffer evidence of pretext reasons for the legitimate, nondiscriminatory reasons given by Defendant. The Court will address each argument in turn.

### 1.     Exhaustion and Timeliness

Defendant's first argument is that many of Plaintiff's claims were never listed in an EEOC charge or were not filed within 300 days of the decision not to hire her. Defendant argues that Jobs 1–8, 10–16, and 18–20 all fail to appear in any of Ms. Watson's three EEOC charges. Plaintiff admits that Jobs 1–8, 10–16, or 18–20 do not appear in any of her three charges but that all the failure-to-hire claims are properly before this Court because the Court may review discrimination that occurs both before and after a filing of an EEOC charge.

#### a.     Jobs 4, 5, and 19

The Court begins with the job non-selections which preceded Charge One. Defendant argues that Plaintiff was aware of denials of three job opportunities at the time of Charge One: Job 4–Belmont Teacher 1, Job 5–Southeastern Teacher 1, and Job 19–Noble Teacher 1.

Plaintiff was notified of non-selection for Job 4 on December 2, 2010, for Job 5 on February 24, 2011, and for Job 19 on April 29, 2011.  (Doc. 40-1, Pl.'s Dep. at Exs. 34, 35, PAGEID#s 2183, 2243; Doc. 40-8, Pl.'s Dep. at Ex. 54, PAGEID# 3713).  Plaintiff does not dispute these dates.  Charge One included no allegations regarding DRC's failure to hire her for any position.  (Doc. 39-1, Pl.'s Dep. at Ex. 2).  Defendant first argues that Plaintiff has no retaliation claim for Jobs 4, 5, and 19 because her notification of non-selection preceded Charge One for each job.  Next, Defendant argues that Plaintiff's race and sex claims relating to Jobs 4, 5, and 19 are not properly before this court because "it is not reasonable to expect that the EEOC would investigate other promotional opportunities that were not put in front of them."  *Scott*, 275 F. App'x at 473.  Plaintiff does not address Defendant's arguments.

Defendant is correct that Plaintiff has no retaliation claim regarding Jobs 4, 5, and 19.  Plaintiff's Complaint notes that "After Plaintiff filed [Charge One], she applied for and was denied employment by the Defendant."  (Doc. 24, 2d Am. Compl. at ¶ 71).  There is no claim for retaliation for Jobs 4, 5, and 19 as it is not possible for Defendant to have retaliated for an event which had not yet occurred.  With regards to Jobs 4, 5, and 19, Plaintiff has presented race and sex discrimination claims for Jobs 4 and 19 and has presented only a race discrimination claim for Job 5.  Accordingly, summary judgment as to Plaintiff's retaliation claims related to Jobs 4, 5, and 19 is **GRANTED**.

Next, Defendant argues that the claim in Charge One—Plaintiff's termination—would not have prompted the EEOC to investigate claims of failure-to-hire.  When an allegedly discriminatory activity happens before the EEOC charge, the Sixth Circuit follows the "expected scope of investigation test."  This test asks whether "'facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim.'"  *Weigel v. Baptist*

*Hosp. of E. Tennessee*, 302 F.3d 367, 380 (6th Cir. 2002) (quoting *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998)).  If the EEOC would investigate the uncharged claim, then the plaintiff may bring suit.  "The burden of demonstrating exhaustion lies with the plaintiff."  *Smith*, 234 F. Supp. 2d at 814 (citing *McBride*, 281 F.3d at 1106).  In determining if the EEOC would investigate the uncharged claims, the Court may consider the type of charges alleged, the activity alleged, and the dates listed by the charging party in determining if the EEOC would have been prompted to investigate uncharged claims.  *Jones v. Sumser Ret. Vill.*, 209 F.3d 851, 853–54 (6th Cir. 2000).

Multiple factors weigh against a finding that the EEOC would have been prompted to investigate the failure-to-hire claims.  The first is that Charge One states that the dates the alleged discrimination took place were August 25, 2010 to October 6, 2010, while the notifications of non-selection for Jobs 4, 5, and 19 occurred after October 6, 2010.  (Doc. 39-1, Pl.'s Dep. at Ex. 2; Doc. 40-1, Pl.'s Dep. at Exs. 34, 35, PAGEID#s 2183, 2243; Doc. 40-8, Pl.'s Dep. at Ex. 54, PAGEID# 3713).  Second, Charge One talks exclusively about actions DRC took while Plaintiff was an employee.  (Doc. 39-1, Pl.'s Dep. at Ex. 2).  Third, a wrongful termination or disparate treatment claim is fundamentally different in scope from a failure-to-hire claim.  The failure-to-hire and removal claims concern different principal parties, different qualifications that the Plaintiff may or may not have, and different employees or applications to which the EEOC must compare Plaintiff.  Ultimately, for the reasons listed above and because Charge One does not discuss or even hint that Plaintiff applied for and was not selected for Jobs 4, 5, and 19, the EEOC could not reasonably be expected to investigate such claims on the basis of Charge One.  Accordingly, summary judgment as to Plaintiff's claims of sex and gender discrimination as to Jobs 4, 5, and 19 is **GRANTED**.

### b.    Jobs 2, 6, 7a, 7b

Next, the Court considers those jobs where Plaintiff was informed of non-selection after Charge One was filed but prior to the 300-day look-back period for Charge Two.  Defendant argues that the earliest Charge Two could have been filed is September 11, 2013, as that date is referenced in the past tense in Charge Two.  (Doc. 39-1, Pl.'s Dep. at Ex. 3).  Plaintiff believes the charge was filed on July 1, 2013 and directs the Court to a fax sent by Plaintiff to the EEOC on July 1, 2013.  (*See* Pl.'s Mem. Contra Ex. 2 at 34–38).  A fax cover sheet included in Plaintiff's exhibit displays an EEOC "RECEIVED" stamp, dated July 1, 2013.  (*Id.*).  The Court will view this factual issue in favor of the Plaintiff as required and assume the EEOC charge was filed on July 1, 2013.  This extends the 300-day look-back period to September 5, 2012.

Therefore, the jobs for which Plaintiff was notified after Charge One but before Charge Two's 300-day look-back period are as follows: Job 2–Hocking Assistant Principal, Job 6– Hocking Teacher 1, Job 7a–Dayton Teacher 1, and Job 7b–Dayton Teacher 1.  Plaintiff was notified of non-selection for Job 2 on July 31, 2012, Job 6 on April 18, 2012, and Job 7 on February 28, 2012.  (Doc. 40-1, Pl.'s Dep. at Ex. 30, PAGEID# 2118; Doc. 40-2, Pl.'s Dep. at Exs. 36–37, PAGEID#s 2278, 2315).  Plaintiff brings sex, race, and retaliation claims for Jobs 2 and 6, brings race and retaliation claims relating to Job 7a, and only a retaliation claim relating to Job 7b.

Defendant argues that these jobs are not properly before this Court because Plaintiff failed to include them in any charge of discrimination and they are outside of the 300-day window of Charge Two.  Plaintiff argues that *Delisle* v. *Brimfield Twp. Police Dep't* allows for this Court to review these claims because they are related to the claims in Charge One.  94 F.

App'x 247, 254 (6th Cir. 2004).   Defendant argues that Plaintiff's interpretation of *Delisle* exceeds the scope of that decision.

Three Sixth Circuit cases address the viability of allegedly discriminatory conduct which occurs after an EEOC filing.  *Bacon v. Honda of Am. Mfg., Inc.*, 192 F. App'x 337, 341–42 (6th Cir. 2006); *Delisle*, 94 F. App'x at 254; *Sherman v. Chrysler Corp.*, 47 F. App'x 716, 721 (6th Cir. 2002).  A careful review of each case is necessary to determine if the Court may consider Plaintiff's post-charge failure-to-hire claims.

In *Sherman*, the plaintiff filed two EEOC charges alleging discrimination and retaliation. 47 F. App'x at 718–19.  After the second EEOC charge, the plaintiff's supervisors agreed not to recommend him for any further promotions.  *Id.*  Additionally, he applied for a promotion and a lateral transfer following the second charge and received neither job.  *Id.* at 719.  The Sixth Circuit held that the "retaliation claims based on acts subsequent to the filing of [the second EEOC] charge, however, were never the subject of an EEOC charge, and therefore were not exhausted."  *Id.* (citing N*at'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)).  The Court relied on the Supreme Court's recent pronouncement in *Morgan*:

> [D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180– or 300–day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed.

*Morgan*, 536 U.S. at 113.

As cited by Plaintiff, the Sixth Circuit came to the opposite conclusion in *Delisle*.  The Sixth Circuit found that *Morgan* did not bar review of post charge claims of retaliation.  *Delisle*, 94 F. App'x at 253.  The *Delisle* Court noted that application of *Morgan* to post-charge

retaliation claims was improper as *Morgan* was restricted to situations where discrete acts of discrimination occurred prior to the 300-day period preceding a charge. *Id.* The Court cited two cases which refused to apply *Morgan* to post-charge claims. *Id.* (citing *Higbee v. Billington*, 246 F.Supp.2d 10, 16-17 (D.D.C. 2003); *Doan v. NSK Corp.*, 266 F.Supp.2d 629, 636, n. 2 (E.D. Mich. 2003)). The panel noted that other circuits[4] allow review of allegedly discriminatory acts that occur after an EEOC charge using a variety of tests. *Id.* at 252–53. Ultimately, the court relied on *Weigel*, and used the "reasonably expected to grow out of the EEOC charge" test. *Id.* at 253–54. The plaintiff claimed that the defendant retaliated against him for filing the EEOC charge by demoting him. *Id.* at 250. The court held that a second filing was unnecessary because the EEOC was already involved and had the chance to mediate the claims. *Id.* at 254. Thus, the purposes of the administrative exhaustion requirement—"to put potential defendants on notice while giving the EEOC the opportunity to investigate and, if possible, to mediate claims"—were served. *Id.* Thus, the Sixth Circuit held that the trial court improperly dismissed the post-charge retaliation claim because it could be reasonably expected to grow out of the EEOC charge. *Id.*

In *Bacon*, the Court considered the tumultuous employment of a Honda employee and his allegedly discriminatory reviews, transfers, and termination. *Bacon*, 192 F. App'x at 339–40. The plaintiff filed three charges alleging discrimination and retaliation. *Id.* at 340. After he filed his second charge—but before the 300-day look-back period of his third charge—the plaintiff received a poor performance review and was transferred to a new unit with "legal concerns"

---

[4] All of the citations to other circuits' post-charge review standards pre-date *Morgan*. *Delisle*, 94 F. App'x at 254 (citing *Fitzgerald v. Henderson*, 251 F.3d 345, 360–61 (2d Cir. 2001); *White v. New Hampshire Dep't of Corr.*, 221 F.3d 254, 262 (1st Cir. 2000); *Anjelino v. The New York Times CO.*, 200 F.3d 73, 96 (3d Cir. 1999) (internal citations omitted); *Butts v. The City of New York Dep't of Hous. Pres. and Dev.*, 990 F.2d 1397, 1401-03 (2d Cir. 1993)).

mentioned as a reason for his transfer. *Id.* at 340. The Court held that "Title VII claims only cover discrete acts of discrimination that occurred within the 300–day period prior to the filing of his charge of discrimination on May 24, 2000 and the 300–day period prior to the filing of his July 10, 2001 charge." *Id.* at 341–42 (citing *Morgan*, 536 U.S. at 113–15). Accordingly, the Court held that any acts occurring between the filing date of his second charge and the 300–day period preceding his third charge were unexhausted and were not actionable, even if they could be used as background evidence. *Id.*

This Court has also decided a similar issue. In *Breech v. Scioto Cnty. Reg. Water Dist. #1*, this Court considered the split in Sixth Circuit authority and determined that *Morgan* does apply to post-charge discriminatory acts. No. 1:03–CV–360, 2006 WL 2422924, at *6 (S.D. Ohio Aug. 21, 2006) (Barrett, J.). The Court noted that both the Tenth Circuit and two more recent District of Columbia District Court cases applied *Morgan* to post-charge claims. *Id.* at *5, (citing *Romero-Ostolaza v. Ridge*, 370 F. Supp. 2d 139, 149 (D.D.C. 2005) (citing *Martinez v. Potter*, 347 F.3d 1208, 1210–11 (10th Cir. 2003); *Velikonja v. Mueller*, 315 F. Supp. 2d 66, 74 (D.D.C. 2004))).

The Court sees no defining characteristics in these cases to reconcile the apparent conflict between *Sherman*, *Delisle*, and *Bacon*. Thus, the Court must make a difficult decision between three well-reasoned Sixth Circuit Court of Appeals decisions. The Court elects to follow *Sherman*, *Bacon*, and *Breech* in finding that *Morgan* bars post-charge discrete claims. Three reasons support this decision. The first is that this Court has already come to same conclusion in *Breech* and the Court does not wish to introduce more inconsistency into this area. *Breech*, 2006 WL 2422924 at *6. Second, *Delisle* included a vigorous dissent on this specific issue while *Bacon* and *Sherman* were both unanimous in applying *Morgan* to post-charge claims. Last,

when considering published decisions, the first decision generally controls because a panel of the Sixth Circuit cannot overrule another panel. *See* 6 Cir. R. 32.1(b); *see also United States v. Curb*, 625 F.3d 968, 973 (6th Cir. 2010) (citing *Sowards v. Loudon Cnty., Tenn.*, 203 F.3d 426, 431, n. 1 (6th Cir. 2000)). Although none of the three Sixth Circuit cases were designated for publication, the Court still finds it prudent to give deference to the first of the three opinions. Accordingly, this Court holds that *Morgan* bars judicial review of discrete acts that occur after the filing date of an EEOC complaint. Because there was no EEOC charge filed within 300 days of Plaintiff's notification of non-selection for Jobs 2, 6, 7a, and 7b, those claims are barred and summary judgment as to all claims relating to those jobs is **GRANTED**.

>    c.    *Jobs 1, 9a, 9b, 17, and 20*

Next the Court considers those jobs that are within the 300-day look-back period of Charge Two: Job 1–Allen Assistant Principal, Job 17–Trumbull Teacher 1, Job 9a–Southern Ohio Correctional Facility ("SOCF") Teacher 1, and Job 20–Ross Teacher 2. Plaintiff brings a retaliation claim for Job 1, race and retaliation claims for Jobs 9a, 17, and 20, and gender, race, and retaliation claims regarding Job 9b. Defendant argues that Jobs 1 and 20 were not included in Charge Two and therefore have not been exhausted. Defendant also argues that although Jobs 9a, 9b, and 17 were included in Charge Two, Plaintiff failed to re-plead these charges within 90 days of receiving her right to sue letter. Each argument will be addressed in turn.

Three of the positions, Jobs 9a and 9b and Job 17 were explicitly included in the charge and there can be no doubt that Plaintiff properly filed a claim with the EEOC as it relates to those charges. Before addressing Defendant's argument that Jobs 9a, 9b, and 17 were untimely filed with this Court, the Court will first determine if Jobs 1 and 20 are properly before the Court.

As discussed *infra* at II.C.1.a, the "expected scope of investigation test" asks whether "facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim." *Weigel*, 302 F.3d at 380 (quoting *Davis*, 157 F.3d at 463). The burden lies with the plaintiff and the Court may consider the type of charges alleged, the activity alleged, and the dates listed by the charging party. *Jones*, 209 F.3d at 853–54; *Smith*, 234 F. Supp. 2d at 814; (citing *McBride*, 281 F.3d at 1106).

Defendant argues that the second charge cannot support Jobs 1 or 20 because Plaintiff was notified of both prior to the earliest date listed in Charge Two under the "Dates Discrimination Took Place" section of the EEOC charge. Plaintiff again relies on *Delisle* in arguing that the case supports a finding of exhaustion. Plaintiff, however, makes no factual argument regarding the specific reasons why Charge Two would lead the EEOC to investigate Jobs 1 and 20.

Charge Two identifies three positions for which Plaintiff received an interview but was not selected. (Doc. 39-1, Pl.'s Dep., Ex. 3). Jobs 9a and 9b were Teacher 1 (ABE GED) positions with SOCF and Job 17 was a Teacher 1 (ABE GED) position with Trumbull Correctional Facility. (*Id.*). Charge Two identifies the "Date(s) Discrimination Took Place" as April 26, 2013 to June 25, 2013. (*Id.*). Regarding Jobs 9a and 9b, Plaintiff alleges that she interviewed for the position, was offered the job, and took a drug test. (*Id.*). Ultimately, the job offer was rescinded. (*Id.*). Plaintiff was selected for an interview for Job 17, but the interviewer informed Plaintiff they were aware of her previous interview and experiences with SOCF. (*Id.*). She did not receive the position. (*Id.*). The SME reviewer for Jobs 9a and 9b was Trent Patterson and the appointing authority was Donald Morgan. (Doc. 55-19, Patterson Reply Decl. at ¶ 3; Doc. 42-13, Morgan Decl. at ¶ 1). The SME reviewer for Job 17 was Jacalyn

McCullough and the appointing authority was Christopher LaRose. (Doc. 55-7, McCullough Reply Decl. at ¶ 3; Doc. 42-16, LaRose Decl. at ¶ 2).

Jobs 1 and 20 share both similarities and differences with the charged Jobs. First, the allegations regarding Job 1 and Job 20 are failure-to-hire claims based on race and retaliation just as the jobs listed in Charge Two are. Second, Trent Patterson was the SME reviewer for both Job 20 and Jobs 9a and 9b. (Doc. 55-19, Patterson Reply Decl. at ¶ 3). However, major differences also exist. Jobs 1 and 20 had different appointing authorities, were for different positions at different facilities, and happened outside of the dates listed on Plaintiff's charge. (Doc. 42-19, Buchanan Dec. at ¶ 1; Doc. 42-7, Coleman Dec. at ¶ 1; Doc. 40-8, Pl.'s Dep. at Ex. 53, PAGEID# 3688; Doc. 39-1, Pl.'s Dep. at Ex. 28, PAGEID# 1750). Job 1 shared no reviewers, interviewers, or appointing authority with either charged job. (Doc. 39-1, Pl.'s Dep. at Ex. 29, PAGEID# 1708; Doc. 42-7, Coleman Decl. at ¶ 1; Doc. 55-12, Jones Reply Decl. at ¶ 3; Doc. 55-19, Patterson Reply Decl. at ¶ 3; Doc. 55-14, Parks Decl. at ¶ 3; Doc. 55-3, Cadogan Decl. at ¶ 3; Doc. 55-7, McCullough Reply Decl. at ¶ 3; Doc. 42-16, LaRose Decl. at ¶ 2). Further, Plaintiff advanced to the interview stage for the charged jobs but did not for Job 20. (Doc. 55-12, Jones Reply Decl. at ¶ 3).

Ultimately, the burden is on the Plaintiff to show that she has exhausted her administrative remedies. Although Plaintiff is correct that *Delisle* and *Weigel* provide the legal basis for this Court to review these claims, Plaintiff provided no factual basis for the application of *Delisle* and *Weigel* in this case. After a review of the claims, the Court finds that an investigation into Jobs 1 and 20 would not naturally have grown out of the allegations of Charge Two. Therefore, summary judgment as to all claims relating to Jobs 1 and 20 is **GRANTED**.

Next, Defendant argues that Plaintiff failed to re-file claims regarding Jobs 9a, 9b, and 17 within ninety days of receiving her right to sue letter from the EEOC. Plaintiff received her right to sue letter for Charge Two on May 28, 2014. (Doc. 12-2, Charge Two Right to Sue Letter). On June 25, 2014, Plaintiff filed her First Amended Complaint, well within the ninety-day period. (*See* Doc. 12, Am. Compl.). On April 1, 2015, the parties filed Joint Stipulations of Dismissal. (Doc. 20, Joint Stipulations). After dismissing various causes of actions, the Joint Stipulation reads, "Plaintiff further dismisses all failure to hire claims relating to any of her applications to DRC, except for those specifically listed below as identified in Defendant's discovery responses to Plaintiff." (*Id.* at ¶ 5). Plaintiff then listed 18 jobs that were identified in Defendant's discovery responses to Plaintiff, but did not include Jobs 9a, 9b, and 17. (*Id.*). Plaintiff filed the Second Amended Complaint on April 9, 2015, well outside of the ninety-day period following the Charge Two right to sue letter. (Doc. 24, 2d Am. Compl.). Defendant argues that this refilling of Jobs 9a, 9b, and 17 was untimely and is barred. Plaintiff argues that the Joint Stipulations intended to "retain these that she had discovered by Defendant's response in discovery in addition to those applications already identified in her Amended Complaint." (Doc. 49. Mem. Contra at 7).

The Sixth Circuit is clear that "the filing of a prior complaint does not toll the ninety-day period and the court cannot extend the time for filing." *Tate v. United Servs. Associates, Inc.*, 75 F. App'x 470, 471 (6th Cir. 2003) (citing *Wilson v. Grumman Ohio Corp.*, 815 F.2d 26, 27 (6th Cir. 1987)). Unless equitable tolling applies, the ninety-day filing requirement requires the Court to dismiss Title VII complaints which are re-filed outside of the ninety-day window. *Id.* The factors to be considered in deciding whether equitable tolling should be applied are: the lack of actual or constructive knowledge of the issuance of the right to sue letter; the party's diligence in

pursuing his rights; the prejudice to the defendant; and the reasonableness of the party's ignorance." *Fort v. State of Ohio Dep't of Rehab. & Corr.*, 22 F. App'x 494, 496 (6th Cir. 2001) (citing *EEOC v. Kentucky State Police Dep't*, 80 F.3d 1086, 1094 (6th Cir. 1996)). "The federal courts sparingly resort to equitable tolling." *Coen v. Riverside Hosp.*, 2 F. App'x 449, 451 (6th Cir. 2001) (quoting *King v. Henderson*, 230 F.3d 1358, 2000 WL 1478360, *5 (6th Cir. Sept. 27, 2000)).

Plaintiff was aware of the right to sue letter and can be deemed to have constructive notice of the letter because she was represented by an attorney. *Id.* (citing *Jackson v. Richards Med. Co.*, 961 F.2d 575, 579 (6th Cir. 1992)). Plaintiff's level of diligence is unclear, but Plaintiff makes no argument on this specific factor. Neither Plaintiff nor Defendant made any argument regarding the prejudice to the Defendant. There does not appear to be a good reason why Plaintiff did not include Jobs 9a, 9b, or 17 in the Joint Stipulations but the Joint Stipulations are clear, Plaintiff dismissed "all failure to hire claims relating to any of her applications to DRC, except for those specifically listed . . ." and chose not to include Jobs 9a, 9b, and 17 in those specifically listed. (Doc. 20, Joint Stipulations at ¶ 5). Accordingly, equitable tolling does not apply and all claims related to Plaintiff's applications for Jobs 9a, 9b, and 17 are time barred and summary judgment is **GRANTED**.

### d. *Jobs 3, 8, 10, 11, 13, 14, 15, and 18*

Next the court considers those jobs for which Plaintiff was notified after Charge Two but before the 300-day look-back period of Charge Three. Charge Two was filed on July 1, 2013. Charge Three was received by the EEOC on April 10, 2015. In turn, the 300-day look-back period for Charge Three extends to any claim for which Plaintiff became aware on or after June 11, 2014. Therefore, any claim for which Plaintiff was notified between July 1, 2013 and June

11, 2014, is barred on the basis of *Sherman*, *Bacon*, and the reasoning set forth in Section II.B.1.b., *supra*.  Those jobs are as follows: Job 3–Marion Assistant Principal notified April 25, 2014; Job 8–Belmont Teacher 1, notified July 5, 2013; Job 13–Pickaway Teacher 1, notified July 15, 2013; Job 10–Lorain Teacher 1, notified October 4, 2013; Job 11–Belmont Teacher 1, notified September 23, 2013; Job 13–Pickaway Teacher 1, notified July 15, 2013; Job 14–Trumbull Teacher 1, notified December 3, 2013; Job 15–Belmont Teacher 1, notified February 13, 2014; and Job 18–Warren Teacher 1, notified January 14, 2014.  (Doc. 40-1, Pl.'s Dep. at Ex. 32 PAGEID# 2168; Doc. 40-4, Pl.'s Dep. at Ex. 41–42 PAGEID#s 2774, 2899; Doc. 40-6, Pl.'s Dep. at Exs. 43, 47, PAGEID#s 3116, 3243; Doc. 40-8, Pl.'s Dep. at Ex. 52, PAGEID# 3580). On the basis of *Sherman*, *Bacon*, and the reasoning set forth in Section II.B.1.b., *supra*, summary judgment is **GRANTED** as to all claims relating to Jobs 3, 8, 10, 11, 13, 14, 15, and 18 in favor of Defendant.

### e. *Jobs 12 and 16*

Neither Plaintiff nor Defendant provided documentation regarding the dates on which Plaintiff was notified of her non-selection for Jobs 12 and 16.  Defendant alleges that notification for each position likely occurred prior to the look-back period for Charge Three.  Plaintiff made no argument or pointed to any specific facts regarding her notification dates for Jobs 12 and 16. It is Plaintiff's burden to establish exhaustion.  *Smith*, 234 F. Supp. 2d at 814; (citing *McBride*, 281 F.3d at 1106).

The opening date for Job 12 is listed as July 7, 2013, and the closing date is August 2, 2013.  (Doc. 40-5, Pl.'s Dep. at Ex. 43).  At some point in 2013, possibly October 2, 2013, the appointing authority, Michelle Miller recommended Greg Bonar for Job 12.  (Doc. 40-5, Pl.'s Dep. at Ex. 43, PAGEID# 2940).  Plaintiff's Third Charge indicates that "it is the custom and

practice of [DRC] to send notifications to non-selected applicants who have interviewed for positions when filled." (Doc. 39-1, Pl.'s Dep. at Ex. 4). Job 11—like Job 12—was a Belmont Teacher 1 position. (Doc. 40-5, Pl.'s Dep. at Ex. 42, PAGEID#'s 2835). Approximately one month passed between the date of the Recommendation for Personnel Selection and the date of notification to Plaintiff. (Doc. 40-5, Pl.'s Dep. at Ex. 42, PAGEID#'s 2889, 2899). Accordingly, the Court finds it is likely that Plaintiff was notified of her non-selection prior to June 11, 2014. Even though the Court can make no definitive finding as to when Plaintiff was notified of her non-selection for Job 12, Plaintiff failed to provide any evidence showing that she was notified within the 300-day window of Charge Three. As it is Plaintiff's burden to show exhaustion, summary judgment as to all claims regarding Job 12 is **GRANTED**.

Similar to Job 12, Plaintiff points the Court to no evidence showing that she was notified of her non-selection for Job 16 after June 11, 2014. At least two applicants denied the position as late as March 11, 2014. (Doc. 40-7, Pl.'s Dep. at Ex. 49, PAGEID# 3288). A third candidate had a "Background Checklist" uploaded on April 26, 2014 but there is no indication if she was hired or when Plaintiff was notified. (*Id.*). Ultimately, the burden still rests on Plaintiff to at least allege that she was notified of her non-selection within the 300-day look-back period for Charge Three.

However, even if Plaintiff was notified of her non-selection for Job 16 within the 300-day look-back period for Charge Three, she still has not provided any facts showing that the EEOC investigation into Charge Three would have reached Job 16. Again, Job 16 and Job 21—the charged job—were for different positions, were in different institutions, and had different appointing authorities. (Doc. 42-17, Crutchfield Decl. at ¶ 2; Doc. 42-20, Justice Decl. at ¶ 3). Jobs 16 and 21 also had different SME reviewers. (Doc. 40-10, Pl.'s Dep. at Ex. 49, PAGEID#

3316, Ex. 55, PAGEID# 3975).  The only similarities between Jobs 16 and 21 is that both are failure-to-hire claims in which Trent Patterson was an interviewer.  (Doc. 55-19, Patterson Reply Decl. at ¶ 4).  Last, Plaintiff's notification of non-selection likely occurred prior to January 29, 2015— the date listed as the earliest date of discrimination in Charge Three.  (Doc. 39-1, Pl.'s Dep. at Ex. 4, PAGEID# 1586).  There is no evidence that Plaintiff was notified of her non-selection for Job 13 after January 29, 2015.  Accordingly, summary judgment as to all of Plaintiff's claims relating to Job 16 is **GRANTED**.

2.  ***Prima facie* case**

Based on all of the foregoing, Plaintiff's only claims remaining are those related to Job 21–Ohio Central Education Administrator 1.  Although Plaintiff may not have claims for the other 20 positions for which she applied, the Court notes that it may still consider the circumstances of those claims as background evidence for the remaining claims.  *Bacon*, 192 F. App'x at 342 (citing *Morgan*, 536 U.S. at 113–15).  Defendant argues that Plaintiff cannot make out a *prima facie* case of retaliation, that there was a legitimate business reason for the not selecting Plaintiff for Job 21, and that Plaintiff cannot establish pretext.  As the standard for race and gender discrimination is different from the standard for retaliation discrimination, the Court will address each in turn.

a.  ***Race and Gender Discrimination***

Plaintiff's *prima facie* burden for her race and sex discrimination claims is as follows: 1) she is a member of a protected class; 2) she was qualified for the job; and 3) she was treated differently than similarly situated persons outside of the protected class.  *Dunlap v. Tennessee Valley Auth.*, 519 F.3d 626, 630 (6th Cir. 2008).  If Plaintiff is successful in showing each of the four factors, the Defendant must come forward with a legitimate, non-discriminatory reason for

non-selection. If Defendant does so, Plaintiff must provide evidence that shows the proffered non-discriminatory reason was pretext.

Defendant does not actually challenge any of the four *prima facie* factors and the Court finds that all are satisfied. Plaintiff is an African American female, both of which are protected classes under Title VII. There is little doubt she was qualified for the position as she received a score from Defendant's SME that was high enough to qualify her for an interview. (Doc. 40-10, Pl.'s Dep. at Ex. 55, PAGEID# 4040–045). Additionally, Defendant does not contest that it chose Dwight Anstaett to fill the position instead of Plaintiff. (*Id.* at PAGEID# 3966). Accordingly, Plaintiff has met her initial burden as to race and sex discrimination.

Mr. Anstaett and Ms. Watson were interviewed by Trent Patterson and Robin Long. (Doc. 55-19, Patterson Reply Decl. at ¶ 4). Mr. Patterson and Ms. Long recommended Mr. Anstaett for the reasons listed in their "Recommendation for Personnel Selection" submitted to Denise Justice, the Appointing Authority for the Ohio Central School System ("OCSS"). (Doc. 42-20, Justice Decl. at 7; Doc. 40-10, Pl.'s Dep. at Ex. 55, PAGEID# 3966). Ms. Long and Mr. Patterson noted that Mr. Anstaett had superior experience "to the other applicants relating to corrections and career technical education." (Doc. 40-10, Pl.'s Dep. at Ex. 55, PAGEID# 3966). Additionally, they noted that he was "extremely knowledgeable" regarding OCSS's mission and the duties of the position. (*Id.*). Last, they noted his wealth "of experience in grant management and technical curriculum." (*Id.*). Ms. Justice selected Mr. Anstaett on the basis of her discussion with the interview panel, the listed reasons in the RPS form, and her "personal familiarity with Mr. Anstaett's background in the field of career technical education . . . ." (Doc. 42-20, Justice Decl. at ¶ 7). Accordingly, the Court finds that Defendant has offered a legitimate business reason for its selection of Mr. Anstaett instead of Plaintiff.

Unlike her thorough review of other jobs at issue in this case, Plaintiff makes no direct attacks on the selection process of Mr. Anstaett, his credentials for the position, or the scoring of her SME.  (*See generally* Doc. 49-1, Pl.'s Aff. at ¶ 7).  Instead, Plaintiff appears to point to her other non-selections as evidence that Defendant's hiring process allows it to discriminate. Plaintiff argues that different SME reviewers have given different scores for Plaintiff even when reviewing for the same or substantially similar job.  (*See* Doc. 49, Mem. Contra at 17–18). Plaintiff states that there is "no legitimate non-discriminatory explanation . . . to explain [a] divergent set of results prepared from a standard form of instructions."  (Doc. 49, Mem. Contra at 18).  The Court agrees that Plaintiff's SME scores were inconsistent but also notes that Plaintiff proceeded beyond the SME stage in her applications for twelve out of the twenty-three positions, including for Job 21.  (*See* Doc. 55, Reply at 16).

Each job is only reviewed by one person, meaning that discrepancies in scoring values between jobs are only relevant if Plaintiff shows that certain reviewers actually favor members of non-protected classes.  If a reviewer chronically reviews each candidate with lower or higher scores, but is internally consistent, there is no claim that the process is discriminatory.  Plaintiff's affidavit alleges this was the case for Job 2–Assistant Principal and Job 3–Assistant Principal. (Doc. 49-1, Pl.'s Aff. at ¶ 7, PAGEID# 4714).  Patterson, the SME for Job 3, gave no applicant credit for teaching experience while Fornal gave every applicant full teaching credit.  (*Id.*). Similarly, each time Trent Patterson reviewed Plaintiff's resume for a Teacher 1 position, he consistently gave her twelve points.  Plaintiff produced no evidence showing that any reviewer actually used the SME scoring process to avoid interviewing women or African Americans.

Ultimately, when Plaintiff's scores for each Teacher 1-ABE/GED position are compared, there is no evidence of bias against Plaintiff.  Plaintiff applied for fifteen Teacher 1–ABE/GED

positions.  Plaintiff was not found to meet the minimum qualifications for Job 4 because the reviewer believed her license to be expired.  (Doc. 42-6, Litzenberger Decl. at ¶ 4).  There is no record of Plaintiff's score for Jobs 5, 6, or 12.  Plaintiff's lowest scores came when Plaintiff received eight points from Karla Williams for Jobs 7a and 7b.  (Doc. 40-2, Pl.'s Dep. at Ex. 37, PAGEIDs# 2325–327).  Although the score of eight points is certainly a low outlier when compared to Plaintiff's other SME reviews, an African American female candidate was selected instead of Plaintiff for one of the job openings.  For the remaining ten positions, Plaintiff received twelve points or higher and received ten interviews.  Although Plaintiff repeatedly states that this process is open to abuse, it does not appear to have affected her ability to receive an interview for Job 21 or many of the other jobs to which she applied.

Next, Plaintiff points out that in some cases, she scored better on the SME review than the selected applicant.  But Plaintiff's own affidavit again shows that this was neither uncommon nor specific to her.  For Job 7a, seven applicants had higher SME scores than the selected candidate.  (Doc. 49-1, Pl.'s Aff. at ¶ 7, PAGEID# 4717–18; Doc. 40-2, Pl.'s Dep. at Ex. 37, PAGEID# 2316).  For Job 7b, the selected female African American candidate scored lower than one other candidate.  (*Id.*).  For Job 1, an African American female candidate received the lowest score of the three candidates selected for an interview but received the job.  (Doc. 39-1, Pl.'s Dep. at Ex. 28, PAGEID# 1699).  Accordingly, the Court cannot find that the SME review process or the hiring of persons with lower SME scores provides any evidence of pretext in Plaintiff's non-selection for Job 21.

Next, Plaintiff argues that the interview process is too subjective because there were no objective measurements or standards constituting a good or bad answer.  Plaintiff relies on *Dunlap v. Tenn. Valley Auth.*, 519 F.3d 626 (6th Cir. 2008) for the proposition that the DRC

34

selection process is pretext because it permits "the selection of any person it chooses and abjectly fails to justify the choice." (Doc. 49, Mem. Contra at 44). In *Dunlap*, the Plaintiff established pretext by "demonstrating that his matrix score was manipulated to keep him out of the top ten applicants." *Id.* at 631. The court noted that "assigned weight given to the interview was changed by the questioners to favor a more subjective process, interview questions were not objectively evaluated, and scores were altered to produce a racially biased result." *Id.* Notably, the alteration of scores and interview weight were against the TVA's own policies. *Id.*

In this case, the process was subjective, but was not altered or changed to become more subjective as was the case in *Dunlap*. There is simply no evidence that any interviewer or SME altered Plaintiff's scores or interview results because of her race or gender. There is also no evidence that the subjective nature of the interview process was against any specific DRC policy. Further, as Defendant suggests, this subjective process still twice selected Plaintiff to fill a position at DRC—for Job 17 and for her original parole officer position. The Court finds no evidence of pretext because the mere "reliance on subjective matrix criteria does not support an inference of discrimination." *Whitaker v. Tennessee Valley Auth. Bd. of Dirs.*, No. 3:08-1225, 2010 WL 1493899, at *8 (M.D. Tenn. Apr. 14, 2010) (quoting *Browning v. Dept. of Army*, 436 F.3d 692, 697 (6th Cir. 2006)).

Instead, "it is incumbent upon [Plaintiff] to show 'a link between the subjective . . . criteria and any discriminatory intent.'" *Id.* Plaintiff argues that the SME and interview process discriminates against her protected classes because DRC hires fewer African Americans and females than white males. But the Supreme Court has stated that in order to determine if there is systemic discrimination, the relevant comparison is between the racial composition of the staff and the relevant labor market. *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 308 (1977).

Plaintiff provides no evidence of the racial or gender composition of qualified teaching and principal candidates in Ohio for the Court to make such a comparison.

Last, Plaintiff argues that DRC told the Virginia Department of Corrections ("VADC") that Plaintiff was eligible for rehire at DRC but did not answer numerous specific questions regarding Plaintiff's employment with DRC.  (*See* Doc. 33-1, Andrews Dep. at Ex. 18, PAGEID#s 232–33).  Plaintiff alleges that DRC's failure to hire her after telling the VADC that she was eligible for rehire is evidence of pretext.  The Court is unsure how this form shows that there is pretext in the decision of DRC not to hire Plaintiff for Job 21.  There is ample evidence DRC considered Plaintiff to be eligible for re-hire, namely, that DRC interviewed her for at least twelve openings following her termination.  The fact that DRC told the VADC that Plaintiff was eligible for re-hire is not evidence showing that their stated reason for not hiring her for Job 21 is pretext.  Thus, summary judgment as to Plaintiff's Job 21 race and gender discrimination claims is **GRANTED**.

> ### b.    Retaliation

Next, Plaintiff argues that her non-selection for Job 21 was retaliation for the filing of the EEOC charges.  The *prima facie* case for a Title VII retaliation claim consists of four elements:

> "(1) the plaintiff engaged in activity protected under Title VII; (2) plaintiff's exercise of her protected rights was known to defendant; (3) an adverse employment action was subsequently taken against the employee or the employee was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment."

*Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 674 (6th Cir. 2013) (citing *Garner v. Cuyahoga Cnty. Juvenile Ct.*, 554 F.3d 624, 639 (6th Cir. 2009)).  Defendant admits Plaintiff satisfies the first and third elements because she filed both Charge One and Charge Two before she was not selected for Job 21.  Defendant challenges elements two and four with affidavits from Job 21's

36

SME reviewer, Denise Justice, and Job 21's interviewers, Denise Justice and Trent Patterson. Plaintiff argues that enough DRC employees knew of Plaintiff's charges and EEOC filings such that there should be a presumption that all SME reviewers, appointing authorities, and interviewers were aware of Plaintiff's charges and lawsuit.

The Sixth Circuit has held that where decision-makers are unaware of a plaintiff's protected activity, the plaintiff cannot make out a *prima facie* case for retaliation.  *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 288 (6th Cir. 2012).  In *Blizzard*, the plaintiff told a human resources specialist at her work that she was considering filing a grievance for alleged discriminatory behavior by her boss.  *Id.* at 281.  Following this conversation, the plaintiff was fired by her boss and replaced with a member outside of the protected class.  *Id.* at 282.  The Sixth Circuit upheld the district court's determination that the plaintiff failed to make out a *prima facie* case on the basis of the plaintiff's conversation with human resources.  *Id.* at 288. Ultimately the Sixth Circuit found that a separate conversation the plaintiff had with a decision-maker and her subsequent termination were sufficient to establish the first three elements, but the court found no evidence of the fourth element.  *Id.* at 289.

The Sixth Circuit has also found that there is no causation where hiring decision-makers are unaware of a plaintiff's protected conduct.  *Hopkins v. Canton City Bd. of Educ.*, 477 F. App'x 349, 361 (6th Cir. 2012).  In *Hopkins*, the plaintiff claimed that the board of education retaliated against her because she filed a charge with the Ohio Civil Rights Commission ("OCRC").  *Id.*  The plaintiff put forth no evidence that the board or the hiring decision-makers knew of her OCRC complaint and thus, the court found that "a reasonable jury cannot infer causation without evidence that the Board knew about Hopkins's job applications or evidence

that the hiring decisionmakers knew about Hopkins's OCRC complaint.  Hiring decisionmakers cannot 'retaliate' when unaware of the supposed triggering act."  *Id.*

In this case, Plaintiff has alleged that she was retaliated against for both Charge One and Two when she did not receive Job 21.  The SME reviewer was Denise Justice who had not previously reviewed Plaintiff's credentials for any other position.  (Doc. 55-5, Justice Reply Decl. at ¶ 5).  Plaintiff has produced no evidence that Ms. Justice knew of her EEOC filings and Ms. Justice declared, "Before screening applications for particular job postings I have never been made aware of whether any applicant for any job posting had filed a charge of discrimination or a lawsuit against DRC."  (*Id.* at ¶ 6).  Ms. Justice and Mr. Patterson interviewed Plaintiff and Mr. Patterson stated that he had "never been made aware of whether any interviewee had filed a charge of discrimination or a lawsuit against DRC."  (Doc. 55-19, Patterson Reply Decl. at ¶ 4).  It is Plaintiff's burden to put forth some evidence that Ms. Justice and/or Mr. Patterson knew of her protected activity.  Plaintiff has not done so and therefore, cannot satisfy the second or fourth elements of her *prima facie* claim for retaliation.   Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's Job 21 retaliation claim is **GRANTED**.

## IV.    CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment is **GRANTED**.  The Clerk shall **REMOVE** Document 20 from the Court's pending motions list.  The Clerk shall enter final judgment in favor of Defendant and **REMOVE** this case from the Court's pending cases list.

**IT IS SO ORDERED.**

   */s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**